# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

NAJIB SHAH SAYED,  )
        *Plaintiff*  )
        )
v.  )    No. 2:13-cv-156-GZS
        )
CAROLYN W. COLVIN,  )
*Acting Commissioner of Social Security,*  )
        *Defendant*  )

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing past relevant work or, in the alternative, work existing in significant numbers in the national economy. The plaintiff seeks reversal and remand on the bases that the administrative law judge erred in (i) rejecting the opinion of treating arm surgeon Samuel S. Scott, M.D., while giving great weight to the opinion of the medical expert who testified at hearing, Thomas Tarnay, M.D., and (ii) finding no medically determinable mental impairment. *See* Plaintiff/Appellant's Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 13) at 8-17. I find no reversible error and, accordingly, recommend that the court affirm the decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), as amended January 1, 2013, which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 14, 2014, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2009, Finding 1, Record at 17; that, through his date last insured, he had severe impairments of lateral epicondylitis in the right elbow and osteochondroma of the left knee, Finding 3, *id.* at 18; that, through his date last insured, he retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and was able to lift and carry 10 pounds frequently and 20 pounds occasionally, sit for six hours in an eight-hour workday, stand or walk for six hours in an eight-hour workday, and balance, stoop, kneel, crouch, crawl, climb ramps and stairs, and reach overhead occasionally, was unable to constantly grip or grasp with the right upper extremity, and needed to avoid temperature extremes, vibration, hazards, irregular uneven walking surfaces, and climbing of ladders, ropes, or scaffolds, Finding 5, *id.* at 20; that, through his date last insured, he was capable of performing past relevant work as an assembler, production, which did not require the performance of work-related activities precluded by his RFC, Finding 6, *id.* at 24; that, in the alternative, considering his age (36 years old, defined as a younger individual, as of his date last insured, December 31, 2009), education (illiterate and unable to communicate in English), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, *id.* at 24-25; and that he, therefore, was not disabled from December 7, 2007, his alleged onset date of disability, through December 31, 2009, his date last insured, Finding 7, *id.* at 25. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of*

*Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(f); SSR 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

Alternatively, the administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 404.1520(g); *Bowen*, 482 U.S. at 146 n.5; *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Handling of Treating Source Opinion

The plaintiff first faults the administrative law judge's rejection of Dr. Scott's RFC opinion in favor of that of Dr. Tarnay, contending that Dr. Scott's opinion was entitled to great, if not controlling, weight and that the administrative law judge failed to provide the requisite good reason(s) for rejecting it. *See* Statement of Errors at 8-14.

3

A treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. § 404.1527(c)(2). However, the question of a claimant's RFC is among issues reserved to the commissioner, with respect to which even the opinion of a treating source is entitled to no "special significance" and cannot be assigned controlling weight. *Id.* § 404.1527(d)(2)-(3); Social Security Ruling 96–2p, reprinted in *West's Social Security Reporting Service* Rulings 1983–1991 (Supp. 2013) ("SSR 96–2p"), at 112.

When a treating source's opinion is not given controlling weight, it is weighed in accordance with enumerated factors. *See* 20 C.F.R. § 404.1527(c)(2).[2] An administrative law judge may give the opinion little weight or reject it, provided that he or she supplies "good reasons" for so doing. *See, e.g., id.* ("[The commissioner] will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's opinion."); Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2013) ("SSR 96-5p"), at 127 (even as to issues reserved to the commissioner, "the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)"); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2013) ("SSR 96-8p"), at 150 (an administrative law judge can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted"). Slavish discussion of the relevant factors is not required. *See,*

---

[2] These are: (i) examining relationship, (ii) treatment relationship, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship, (iii) supportability – *i.e.,* adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) specialization – *i.e.*, whether the opinion relates to the source's specialty, and (vi) other factors highlighted by the claimant or others. *See* 20 C.F.R. § 404.1527(c).

*e.g., Golfieri v. Barnhart*, No. 06-14-B-W, 2006 WL 3531624, at *4 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 29, 2006).

The opinion at issue is contained in a March 9, 2012, letter written by Dr. Scott in response to the plaintiff's counsel's request for an opinion on formal restrictions on the plaintiff's use of his upper extremities. Dr. Scott stated:

> I think that [the plaintiff] has very limited lifting and carrying capacity – 5 pounds on an occasional basis. Pushing and pulling are also very limited. Overhead reaching should not be performed. Climbing on a ladder or other similar endeavors should be avoided. He cannot perform any repetitive use of either upper extremity. This would include the use of vibratory tools. He should not be working in either a hot or cold temperature environment.

Record at 563.

At hearing, Dr. Tarnay testified that he (i) disagreed with Dr. Scott's five-pound carrying/lifting limitation, given his observations of the plaintiff at the hearing, (ii) found no support for the carrying/lifting or pushing/pulling limitations in the record, although the plaintiff's testimony suggested that being in a high-volume repetitive motion environment probably would be inappropriate, (iii) agreed with a restriction against temperature extremes, and (iv) disagreed, given his observations of the plaintiff at the hearing, that he could perform no overhead reaching, although he would be concerned if the plaintiff had to do so all day long. *See id*. at 62-64.[3]

Dr. Tarnay also testified that he disagreed with the conclusion of nonexamining consultant Donald Trumbull, M.D., that the plaintiff had failed to establish any medically determinable physical impairments, *see id*. at 59, 509-17 (Trumbull RFC opinion dated January 25, 2011), and agreed with the opinion of nonexamining consultant Iver C. Nielson, M.D., that

---

[3] Asked to describe the observations on which he relied, Dr. Tarnay explained that the plaintiff "raised his arm smartly for the swearing in and . . . was rather animated at least with the right arm for most of the hearing and part of the time we saw some activity with the left arm." Record at 67.

5

the plaintiff could lift/carry 10 pounds frequently and 20 pounds occasionally, sit for six hours out of an eight-hour workday, perform no constant repetitive grip/grasp with his right upper extremity, occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl, never climb ladders, ropes, or scaffolds, and should avoid concentrated exposure to vibration and hazards such as machinery and heights, *see id*. at 60-61, 481-88 (Nielson RFC opinion dated July 20, 2010). However, he disagreed with Dr. Nielson that the plaintiff could stand and/or walk for at least two hours in an eight-hour workday, stating that, from what he had seen and heard, the plaintiff could stand and/or walk for six hours. *See id*. at 60, 482.

The administrative law judge gave great weight to the Tarnay testimony and little weight to the Scott opinion, explaining, in relevant part:

> [Dr. Tarnay] testified reliably at hearing that the [plaintiff] has lateral epicondylitis in the right arm status post fractured radius and possible nerve entrapment. Dr. Tarnay stated that while scar tissue at the nerve noted during surgery supports this diagnosis, post-surgical EMG studies were normal. . . . Dr. Tarnay also testified that he disagreed with the opinion contained in exhibit 15F [the Trumbull RFC opinion], and agreed only in part with the conclusion in exhibit 12F [the Nielson RFC opinion], as he believed the [plaintiff] can stand and walk for at least six hours in an eight-hour workday. The undersigned has given great weight to Dr. Tarnay's testimony as it is well reasoned and supported by the evidence as a whole.
>
> ***
>
> On March 9, 2012, [Dr. Scott] opined that the [plaintiff] is very limited with respect to lifting, carrying, pushing, and pulling; that he is unable to lift and carry more than five pounds occasionally, perform overhead reaching with either upper extremity, climb ladders or perform similar endeavors, or repetitively use either upper extremity; and that he should avoid vibrating tools and work in either hot or cold temperature environments. Little weight has been given to this opinion, as the degree of limitations cited is not supported in the contemporaneous treatment records.

*Id*. at 22-23 (citations omitted).

The plaintiff argues that this is does not constitute a good reason for rejecting the Scott opinion because the administrative law judge failed to appreciate his longitudinal treatment history with Dr. Scott. *See* Statement of Errors at 12. He contends that, while Dr. Scott arrived at a definitive diagnosis (radial tunnel syndrome) only after presenting the plaintiff's case at a Hand Conference and performing arm surgery on him on June 10, 2010, Dr. Scott noted objective signs and symptoms of that condition beginning in October 2009, including right forearm swelling and diminished grip strength. *See id*. at 9-10, 14. At oral argument, his counsel emphasized that, in performing surgery, Dr. Scott found the most important objective evidence: that the plaintiff had "a radial nerve which appeared to be caught at the arcade of Froesch and made a right-angle turn to dive beneath the arcade[,]" and that "it did appear that there was pressure exerted on the radial nerve by the supinator." Record at 493. He asserted that this clarified the etiology of the plaintiff's symptoms and that the administrative law judge overlooked contemporaneous evidence consistent with the ultimate diagnosis, for example, by erroneously stating that medical records failed to document swelling. *Compare id*. at 21 *with id*. at 453 (notation by Dr. Scott on October 20, 2009, of "definite fullness" of the forearm and provision of Medrol dose pack "to try to see if we can calm down any of the swelling").

The plaintiff contends that the administrative law judge committed further legal error in giving great weight to the opinion of a non-treating, nonexamining expert. *See* Statement of Errors at 13-14. He cites *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003), and other caselaw from the United States Court of Appeals for the Eighth Circuit for the proposition that "the opinions of non[-]treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole." *Id*. at 13 (citations and internal quotation marks omitted).

7

I perceive no error in the administrative law judge's resolution of conflicts in the medical opinion evidence. First, as the commissioner suggests, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Specific Errors ("Opposition") (ECF No. 15) at 2-3, the plaintiff's reliance on caselaw from the Eighth Circuit is misplaced. The First Circuit has held that "the testimony of a non-examining medical advisor . . . can alone constitute substantial evidence, depending on the circumstances." *Berrios Lopez v. Secretary of Health & Human Servs.*, 951 F.2d 427, 431 (1st Cir. 1991). *See also Brown v. Astrue*, No. 2:10-cv-27-DBH, 2010 WL 5261004, at *3 (D. Me. Dec. 16, 2010) (rec. dec., *aff'd* Jan. 4, 2011) (rejecting argument that administrative law judge was required to give more weight to treating source's opinion than those of non-examining consultants; noting, "A blanket rule such as that posited by the [claimant] would render the state-agency reviews of a claimant's medical records a pointless exercise. It is also contrary to controlling precedent in this circuit.").

Second, as the commissioner argues, *see* Opposition at 3-4, the administrative law judge supplied the requisite good reasons for rejecting the Scott opinion. His focus on the contemporaneous medical records (for the period from the alleged onset date of December 7, 2007, through the date last insured of December 31, 2009) was appropriate, particularly given that Dr. Scott phrased his 2012 opinion in the present tense. Even assuming, as the plaintiff's counsel contended at oral argument, that the Scott opinion reasonably can be read to encompass the relevant period, the administrative law judge permissibly rejected it on the basis of its lack of supportability and inconsistency with the record. *See* 20 C.F.R. § 404.1527(c)(3)-(4).

The administrative law judge correctly observed at hearing that (i) Dr. Scott did not attribute the assessed restrictions to any particular medical impairment or clinical or radiological finding, and (ii) Dr. Tarnay testified that he found nothing in the record supporting those

restrictions. *See* Record at 66. Dr. Tarnay reached that conclusion despite taking into account the evidence to which the plaintiff ascribes great significance: Dr. Scott's progress and surgical notes, including evidence of possible nerve entrapment of the right arm. *See id*. at 57, 64-66.[4]

Moreover, as the administrative law judge noted in canvassing the evidence bearing on the plaintiff's right arm impairment, *see id*. at 21, the contemporaneous medical evidence reflected little by way of objective findings. While the administrative law judge erred in stating that there was no documentation of swelling, the plaintiff does not challenge his further observations that (i) diagnostic studies, including magnetic resonance imaging studies and nerve conduction studies, were normal or unremarkable, (ii) despite findings on examination of "tenderness over the lateral epicondyle, mild edema, and decreased grip strength[,]" the plaintiff "remained neurovascularly intact with negative Tinel, Finkelstein, and Adsen signs," and (iii) "medical records fail[ed] to document limitation of motion, . . . erythema, crepitus, joint deformity, laxity, or motor, sensory, or reflex loss[,]" Record at 21 (citations omitted).

The administrative law judge supportably resolved conflicts in the medical opinion evidence, according great weight to the Tarnay testimony, which in turn largely accorded with the findings of Dr. Nielson, and rejecting the Scott opinion on the basis of lack of explanation/foundation and inconsistency with contemporaneous treatment records.

---

[4] At oral argument, the plaintiff's counsel noted that Dr. Tarnay had surmised that scar tissue caused by a fracture had led to the apparent nerve entrapment that Dr. Scott found when he performed surgery on the plaintiff's right arm. *See* Record at 65-66. He argued that Dr. Tarnay overlooked evidence that there was no fracture, including a diagnosis by William W. Dexter, M.D., after noting that multiple views of the elbow were unremarkable, of right lateral epicondylosis, *see id*. at 308, and a notation by James Glazer, M.D., following a review of radiographs that did not clearly show a fracture, that it was far more likely that the plaintiff had a traumatic ulnar nerve deficit of the right arm, *see id*. at 444. The plaintiff's counsel allowed that this might be a distinction without a difference, and I find that it is. Dr. Tarnay took into account the evidence that the plaintiff's counsel deemed critical – that Dr. Scott noted in performing surgery that a nerve appeared to have been trapped. The cause of the apparent entrapment is immaterial.

9

### B. Failure To Find Severe Mental Impairment

The plaintiff also takes issue with the administrative law judge's failure to find a severe mental impairment despite the conclusion of Heather McClellan, Ph.D., after performing a neuropsychological evaluation in December 2005, that the results reflected significant developmental difficulties and the effects of a probable severe head trauma, which contributed to deficits in learning, memory, and attention, and that he had a depressive disorder. *See* Statement of Errors at 15-17.

The commissioner contends that the finding is supported by substantial evidence and that, even if the administrative law judge erred, the plaintiff fails to demonstrate that the error would have been outcome-determinative. *See* Opposition at 7-10; *see also LaBonte v. Astrue*, Civil No. 09-358-P-S, 2010 WL 2024895, at *3 (D. Me. May 18, 2010) (rec. dec., *aff'd* June 17, 2010) ("[I]n this district, assuming that an error has been made at Step 2 in failing to find a particular impairment to be severe, that error is uniformly considered harmless, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.").

At oral argument, the plaintiff's counsel acknowledged that it was not clear what the outcome would have been, if the administrative law judge had found a severe mental impairment. Reversal and remand, hence, are not warranted on this basis.

### II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum,*

*within fourteen (14) days after being served with a copy thereof.   A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 28th day of April, 2014.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge